[Filed May 19, 1890.]

## JOHN WEIDERT, RESPONDENT, *v.* STATE INSURANCE CO., APPELLANT.

CONTRACT OF INSURANCE—PRINCIPAL AND AGENT.—Contracts of insurance must have effect like all other written contracts. The intention of the parties must govern and control, and when the language used is plain and unambiguous, the intention of the parties to the contract must be gathered from the language used therein. In such case the office of the court is to ascertain the language used and then enforce it according to its legal effect; and when an agent's authority is limited and the party with whom he contracts has notice of such limitation or want of authority in the agent, under no circumstances can the principal be bound beyond the agent's authority.

POLICY OF INSURANCE—PRINCIPAL AND AGENT.—When a policy contained an express limitation on the power of agents, an agent has no legal right to contract as against the company with a party having actual knowledge of such want of authority so as to change the terms of the contract, or to dispense with the performance of any part of the consideration, either by parol or in writing; and a party by accepting a policy containing such limitation upon the powers of the agent, is estopped from setting up powers in the agent, at the time, in opposition to the conditions and limitations in the policy.

PRINCIPAL AND AGENT—EXTENT OF AGENT'S POWERS.—Agents of underwriters at a distance from their principals are either general or special agents possessing plenary or limited powers depending on the terms of the grant of power, or powers, exercised with the assent of the principals; and the extent of their power is to be determined by the same rules that control in respect to other agencies.

CONTRACT OF INSURANCE—SPECIAL AGENTS.—In case of a special agent the assured must, at his peril, know whether the act relied on is within the scope of the agent's real or apparent authority.

WRITTEN CONTRACTS—CONTEMPORANEOUS AGREEMENTS MERGED.—When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms; all antecedent and contemporaneous oral agreements are merged in the writing. In such case the writing is the sole evidence of the agreement, unless a mistake or imperfection in the writing is put in issue by the pleadings, or when the validity of the agreement is the fact in dispute.

EVIDENCE—CROSS-EXAMINATION.—When it appeared that a party had two furnished houses in the same vicinity, and there was a question which was his residence, it was not error in the trial court to exclude evidence on his cross-examination tending to show at which place he had the most furniture. Such fact was too remote to give any aid in determining the question.

PLEADING—INSTRUCTION ON A MATERIAL FACT NOT IN ISSUE SUGGESTED BUT NOT DECIDED.—In an action on a policy of insurance, when the plaintiff alleges that he duly performed all the conditions of said contract on his part, and upon the trial

seeks to prove that the defendant waived the performance of certain conditions of the policy, and relies solely upon such waiver; *quære*, whether or not it is compe-tent for the court to instruct the jury on a material issue outside of the pleadings, suggested but not decided, because the question was not made at the trial.

POLICY OF INSURANCE—CONDITIONS—PROOF OF LOSS.—When a policy of insurance required the assured to make certain specific proofs in case of loss, such require-ments are conditions to be complied with by the assured before he has any legal claim against the company for loss, and in such case all the conditions must be substantially, if not strictly, complied with or no recovery can be had.

WAIVER—FACTS EXAMINED AND HELD INSUFFICIENT.—The facts examined and held that the condition of the policy as to proof of loss were not waived, and that there was not sufficient evidence to carry that question to the jury.

WAIVER—ESTOPPEL.—A waiver that would preclude the defendant from relying on the terms of the policy must be in the nature of an estoppel. The company must, by some act of an agent having real or apparent authority, have done or said some-thing that induced the plaintiff to do or forbear to do something whereby he was prejudiced.

POLICY—CONDITIONS—FAILURE OF ASSURED TO MAKE PROOFS.—When a failure to comply with the conditions of a policy is due wholly to the fault of the insured, the general doctrine seems to be that the policy is dead and cannot be revived by any-thing short of a new consideration or an express waiver on the part of the insurer. If no proofs are served in time, and the insurer has done nothing to induce the omission, the insured has lost all rights under the policy, and the insurer is not bound to specify its defenses, nor does it waive those not specified.

POLICY—TERMS OF AS TO WAIVER.—Where a policy contained an enumeration of par-ticulars that should not constitute a waiver of its terms or conditions in an action thereon, it may rely upon the terms of the policy unless precluded by fraud or by such facts as would constitute an estoppel.

NON-SUIT—OCCUPANCY OF THE DWELLING-HOUSE INSURED.—On motion for a non-suit, the facts examined and held that the dwelling-house insured was not occupied at the time of the loss within the meaning of the policy.

POLICY OF INSURANCE—PROPERTY UNOCCUPIED.—The application for a policy of insur-ance provided that, "in case any of said property shall be or become vacant or *unoccupied*, the said policy shall remain suspended and be of no effect in respect to any of these contingencies;" and further provided that if any change shall take place in the *occupancy* of said premises   *   *   *   "without being immediately notified and its consent thereto obtained in writing and endorsed hereon and signed by the president or secretary of this company, this policy shall, in either event, immediately thereafter be null and void"; and, further, that "this company shall not be liable for any loss or damage while the above-mentioned premises shall be vacant or *unoccupied*"; *held*, that while the premises insured were not *occupied* the policy was suspended, and if the loss occurred during said time there was no liability on the policy. For a dwelling-house to be *occupied* within the meaning of this policy it must be used by human beings as their customary place of abode.

APPEAL from Umatilla county: JAS. A. FEE, judge.

On the twenty-eighth day of March, 1888, the defendant insured the plaintiff's house and certain household goods therein against loss or damage by fire. On the ninth of July of the same year said house and goods were destroyed by fire, and this action is brought to recover the amount of such policy, which is $350. The plaintiff had judgment

for the full amount claimed, from which this appeal is taken.

The complaint is in the usual form in such cases. On the subject of the loss and proof thereof it has this averment: "That on the ninth day of July, A. D. 1888, said dwelling-house, with said beds, bedding and household furniture therein, were totally destroyed by fire; * * * that immediately thereafter plaintiff furnished the defendant with proof of his said loss and interest, and otherwise performed all the conditions of said policy on his part to be performed."

The answer denies each of the allegations of the complaint except the issuing of the policy and the loss. It also contains the following new matter: "That the basis of said policy of insurance is the written application of the plaintiff therefor, and that said policy was so made and issued upon and under said application and upon and under the statements, representations, agreements and warranties therein contained. Among other things said application contained the following provisions, to wit: "Application is made by John Weidert, of Vansycle Canyon, county of Umatilla, State of Oregon, for insurance against loss or damage by fire by the State Insurance Company in the sum of three hundred and fifty dollars, for the term of one year from the thirteenth of March, 1888, by a policy, the usual conditions of the company, based upon the terms, agreements and statements herein and hereon, on the property hereinafter described. The applicant agrees that all valuations are made by such applicant, and that the company is not to pay in case of loss to exceed three-fourths of the actual cash value of any building; that if this application does not truly answer the following interrogatories, and correctly describe, state and make known the property, the value, the title, the location, the exposures, the occupancy, the liens and incumbrances thereon and interest therein, or if any misrepresentations or omissions to make known any and all facts material to the risk are made herein or

hereon, then the said policy shall, in either event, be null and void. The applicant further agrees that if the applicant or any one else shall have or shall hereafter make any other insurance on the property herein named or any part thereof, or if there be any change or alteration either in the tenants, title, incumbrances, occupancy, stove pipes passing through the roof or sides of the building or the erection of buildings or exposures, or if said property shall be conveyed or incumbered, in whole or in part, whether by judgment, mechanics' lien, judicial decree, mortgage, voluntary transfer or otherwise, or in case any of said property shall be or become *vacant* or *unoccupied,* that the said policy shall remain suspended and be of no effect in respect to any of these contingencies, unless notice shall be given to this company, and its consent obtained in writing, and the same be endorsed upon the policy by the secretary before loss or damage shall occur. The applicant further agrees that the foregoing answers and statements are true, and a warranty on the part of the assured ; that any solicitor or agent of this company, in filling out or writing this application, in performing such act, is the agent of and acts for such applicant, and not of or for or on behalf of this company, under any circumstances or in any manner whatever, and that the company shall in no respect be bound by any act done or statement made to, promise or knowledge of, any solicitor, agent or other person which is not in such application, and that any notice given to, representation made, or knowledge of, any solicitor, agent or other person representing this company, of any fact, change, act or thing relating to the property, title, occupancy, incumbrance or otherwise, insured under said policy, subsequent to the issuing of the same, shall not in any wise be binding on or be regarded as notice to or knowledge of this company; but in order to be binding must be endorsed in writing on said policy by the company as provided therefor." * * *

The policy, after declaring that the basis of said contract is the said application, which shall be deemed and taken

as a part of the policy, and as a warranty on the part of the assured, and that any false or untrue answers, representations or statements therein or thereon should render the said policy void, and that this contract of insurance was embraced wholly in said application and obligation of the assured, and this policy contains this further provision: "This company shall not be liable for any loss or damage while the above-mentioned premises shall be *vacant or unoccupied* or resulting from the neglect of the assured to use all possible effort to keep the property safely protected against fires that may originate or start on the prairies," etc. And this: "In case said property or any part thereof shall be sold, conveyed or encumbered, or if any change shall take place in the title, possession or *occupancy,* * * * without being immediately notified to this company, and its consent thereto obtained in writing and endorsed hereon and signed by the president or secretary of this company, this policy shall in either event, immediately thereafter, be null and void."

The policy also contains a repetition of the statement contained in the application to the effect that it is a part of this contract that any person other than the assured who may have procured this insurance to be taken by the company shall be deemed the agent of the assured and not of this company under any circumstances whatever, etc. It is then alleged that the plaintiff, in disregard and violation of the agreements, provisions and conditions of said application and said policy, permitted and caused said dwelling-house to become and remain unoccupied prior to and continuing up to the time of said fire without notifying the defendant thereof and without in any way obtaining the consent of the defendant thereto or therefor.

As a further and separate defense the defendant alleges the following facts: That among other conditions on the back of said policy, and made a part thereof by the terms of said policy and by the terms of said application therefor, it is provided: "All persons having a claim under this policy for loss or damage shall proceed at once

to put the property saved or damaged in the best order possible, separating the damaged from the undamaged, and shall give immediate notice, and shall render a particular account thereof in writing to the company, stating the time, origin and circumstances of the fire; the occupancy of the building insured or containing the property insured at the time of the loss; the whole value and ownership of the property insured, and all encumbrances thereon; the amount of loss upon each article; other insurance, if any, giving a copy of all policies,—all of which shall be verified by the affidavit of the assured or claimant." It is then alleged by special averment in the answer that the plaintiff never complied with either or any of these requirements and conditions.

The reply, among other things, contains these denials and allegations: Plaintiff denies that, in disregard or violation of the agreements, provisions or conditions of said or any application of said or any policy, said plaintiff permitted or caused said dwelling-house to become or remain unoccupied for a long or any period prior to or continuing up to the time of said fire without notifying the defendant thereof, or without in any way obtaining the consent of the defendant thereto or therefor; and the plaintiff alleges that at the time he made the application to the defendant for said insurance policy it was expressly understood and agreed by and between the plaintiff and the defendant that said plaintiff should and would be permitted at any and all times during the continuance of said policy to remove from said house and remain from said house to pursue certain farm labor in which plaintiff was engaged and had to do and perform, and for the further purpose of going to and returning from the mountains to haul wood for the use of the plaintiff and his family; and it was mutually understood and agreed, and defendant at the time of said application consented, that while the plaintiff was absent as aforesaid plaintiff's wife and family might remove to some place not so lonesome as the said house of the plaintiff.

The reply further denies that, in disregard of the provisions of said or any condition, the plaintiff failed or refused to give notice to the defendant in writing or proof of his said alleged loss in writing or at all, or to render a particular or any account thereof in writing or at all, or the origin or circumstances of the fire, or the whole value or any value or ownership of the property insured, or any part thereof, or all or any of the incumbrances thereon, or the amount or loss upon each article or articles; and denies that he failed or refused to verify by affidavit or otherwise or at all any proof of any loss or any account or notice thereof of any kind; and plaintiff alleges that immediately after said fire he made frequent applications to defendant and to its agent to adjust his loss caused by said fire, but said defendant at all times neglected and refused to entertain plaintiff's application or to adjust his said loss. The other facts appear in the opinion.

*W. H. Wilson,* for Appellant.

*W. E. Crews,* for Respondent.

STRAHAN, J., delivered the opinion of the court.

The following are the assignments of error made by the appellant and which have been argued in this court:

First—Error of the court in permitting the plaintiff to give evidence of an oral agreement between him and one Reeder, a solicitor of the defendant company, to the effect that the plaintiff might leave the insured premises unoccupied.

Second—Error of the court in refusing to allow counsel for the defendant to ask the plaintiff, while a witness on his own behalf, how much more furniture the plaintiff had at what was known as his middle ranch than at the place that was burned.

Third—Error of the court in charging the jury as follows: "The court charges you that if you find from the evidence that the plaintiff made a statement in writing to the company, although such statement was not verified,

if the company acted upon it and sent an adjuster to settle or adjust the loss, then the company will be deemed to have waived that condition in the policy."

Fourth—Error of the court in overruling defendant's motion for a non-suit.

These assignments, so far as may be necessary to the proper disposition of the case, will be considered in their order.

1.   The first assignment of error is based on what occurred at the trial in the examination of the plaintiff as a witness in his own behalf.   He testified without objection that in March, 1888, one L. B. Reeder came to him and asked him to have his property insured, and said that he had been there twice before to see him on the same business.   Counsel for the defendant here asked and obtained leave of the court to inquire of said witness whether he had made a written application for insurance, and he answered that he had; and said application being shown to the witness, he further testified that he had signed it at the time, but that he did not read it or hear it read except as Mr. Reeder read it to him; that he was a German and did not speak, read nor write the English language very well, but that he could read some and there were always some difficult words that he did not know the meaning of.   The application was then offered in evidence and was received without objection, and the bill of exceptions recites that it contained the provisions set forth in the defendant's answer, in the same words as in said answer set forth.   It also contained a particular description of the premises insured, and stated that the same was occupied by the insured as a private dwelling, and the following statements were endorsed thereon:   "A part of Mr. Weidert's family lives in this house and the other part lives in his other house," and on the back thereof was signed the name, "L. B. Reeder, solicitor."   The witness then testified, under an objection, and exception by the defendant, that, at the time he made his application for insurance, he asked Reeder particular questions—*e. g.:*

"How is this," I said, "when I move away and have part of my family here and a part with me as I will have to do?" He said: "As long as your furniture remains here and the house is occupied, all right." I said: "I will be away plowing before long now and cannot stay on this place all the time." And he said: "It does not make any difference; you can move." I then said: "If this is the case, if I don't have to stay right steady I will get insured." Whether this evidence is competent is the question submitted for our determination.

One objection made to this character of evidence by the appellant is, that Reeder had no authority to make any contract or agreement whatever with the assured, and that his want of authority to make agreements concerning the occupancy of the premises insured outside of or different from the terms of the application and policy was plainly printed in the application, which the plaintiff signed, and that he was bound to take notice of his want of authority. It must also be observed in this connection that the plaintiff says that Mr. Reeder read over the application to him at the time he signed it, and it is not pretended that he read it incorrectly; and while the plaintiff testified that he is a German and does not understand English very well, he nowhere claims that he did not understand every word of that application. In the light of these facts how can it be claimed that Reeder could make any other or different contract with the assured than to take his written application according to the rules of the company and forward it to the home office; and if it was there approved, a policy to be based on said application, and not on something the solicitor may have said to the assured, would be then issued? When it expressly appears that this solicitor's powers were so limited and that the plaintiff knew it, how can it be claimed that the defendant was bound by his unauthorized act. Contracts of insurance must have effect like all other written contracts. The intention of the parties must govern and control, and when the language is plain and unambiguous, such intention must be gathered from such language. In

such case the court simply ascertains the language the parties themselves have agreed to and written down in their contract and enforces it according to its legal effect. When an agent's authority is limited and the party with whom he contracts has notice of such limitation or want of authority in the agent, under no circumstances can the principal be bound beyond the agent's authority. This principle has been applied to contracts of insurance. In *Catoir* v. *The American Life Ins. and Trust Co.*, 33 N. J. 487, it was held that when a policy itself contained an express limitation upon the power of agents, an agent had no legal right to contract as against the company with the party to whom the policy had been issued so as to change the terms of the policy, or to dispense with the performance of any part of the consideration, either by parol or in writing; and such party is estopped by accepting the policy from setting up powers in the agent at the time in opposition to the conditions and limitations in the policy. So in *Armstrong* v. *State Ins Co.*, 61 Iowa, 212, it was held that an agent of a fire insurance company who had authority to take applications for insurance and receive and receipt for premiums and forward applications and premiums and receive from the company policies of insurance when issued and deliver them to the assured, and who had no other or further powers, real or apparent, could not bind the company by a contract of insurance. So in *Critchett* v. *The American Ins. Co.*, 53 Iowa, 404, where a note was given in payment of a premium upon an insurance policy, which provided that if default was made in the payment of any instalment of premium upon any premium note for thirty days after due, the company should not be liable for any loss happening after that time and before payment. It was claimed that an agent who had authority to receive applications for insurance and collect and transmit premiums, had extended the time of payment, but it was held that such extension, even if shown, was not binding on the company and they were not liable for loss occurring during the period of such pretended extension.

*Merseran* v. *Phœnix Mutual Life Ins. Co.*, 66 N. Y. 274, is a very important case involving the principle under consideration. In that case the limitation of the agent's powers was endorsed on the policy, and he possessed powers similar to those conferred by the defendant company in this case. The agent called upon the assured, who was ready to pay the premium, but the requisite receipts had not been forwarded from the home office to enable the agent to receive the premium, and therefore the agent said to the assured, "Give yourself no trouble about it; I will see that you are kept all right with the company." A loss occurred and the company set up the non-payment of the premium as a defense, and the plaintiff relied upon a waiver by the company through its agent; but the defense was sustained. Allen, J., delivering the opinion of the court, said: "Agents of underwriters at a distance from their principals are either general or special agents, possessing plenary or limited powers depending upon the terms of the grant of power or powers, exercised with the assent of the principals; and the extent of their authority is to be determined by the same rules that control in respect to other agencies." And it was further held that the assured had knowledge of the limited powers of such agent and he was estopped from claiming that said limitation did not exist or in hostility to it. And in Wood on Fire Insurance, § 411, the doctrine is stated as an elementary principle. It is said: "So, where direct notice, or any notice which the assured as a prudent man is bound to regard, is brought home to the assured, limiting the powers of the agent, he relies upon any act in excess of such limited authority at his peril. That an insurance company has a right, in a fair way, to limit the powers of its agents, must be conceded, and when it does impose such limitations upon his authority in a way that no prudent man ought to be mistaken in reference thereto, it is not bound by an act done by its agent in contravention of such notice." And *Sluggart* v. *Lycoming Fire Ins. Co.*, 55 Cal. 408; *Pottsville Mutual Fire Ins. Co.* v. *Fromm*, 100 Penn. St. 347; *Residence Fire Ins. Co.*

v. *Hannawold,* 37 Mich. 103; *Winnesheik Ins. Co.* v. *Holz-grafe,* 53 Ill. 516; *Dickinson Co.* v. *Mississippi Val. Ins. Co.,* 41 Iowa, 286; *Security Ins. Co.* v. *Fay,* 22 Mich. 466; *Mitchell* v. *Lycoming Mut. Ins. Co.,* 51 Penn. St. 402; *Alexander* v. *Germania Ins. Co.,* 66 N. Y. 464; 23 Am. R. 76; *Galbraith* v. *Arlington etc. Ins. Co.,* 12 Bush, 29, are to the same effect. The law of agency is to be applied here, and it is not different in its application to insurance from what it is in any other case to which it is applicable. 2 Wood on Fire Insurance, § 421, no doubt states the true rule. The author says: ''But, in all cases, the distinction between the powers of general and special agents should be kept in view, and, in the case of a special agent, the assured *must at his peril know whether the act relied on is within the scope of his real or of his apparent authority.* He is bound to know when he has passed the precise limits of his power, and cannot rely upon the assumption of authority by the agent to do an act beyond the scope of actual authority, real or apparent. The declarations of an agent are not evidence of his authority, *but the scope and extent of his powers must be determined by his actual authority or by his acts, and the recognition thereof by his principal.*'' Counsel for respondent cites *Woodruff* v. *The Imperial Fire Insurance Co.,* 83 N. Y. 133; but in that case the agent did not assume to make a different contract from what was contained in the application and policy, nor does it appear what was the scope or extent of his authority or apparent authority. He also cites *Carroll* v. *Girard Fire Ins. Co.,* 72 Cal. 297, but that case relates to the question of waiver by the company, and does not touch the question under consideration. *Menk* v. *Home Mut. Ins. Co.,* 76 Cal. 50, 9 Am. St. R. 158, is also cited. In that case under an issue of misrepresentation it was held competent in an action on a fire insurance policy to give evidence that the application was made out by an agent of the insurance company with full knowledge of the condition of the premises, and that the plaintiff did not know what representation it contained. Whether the agent was general or special does not appear, and express averments were made

as to the misrepresentation. *Continental Ins. Co.* v. *Pearce,* 39 Kan. 396, 7 Am. St. R. 557, is also cited by respondent, but that case does not hold that the acts of a special agent with limited powers known to the assured would bind the company. It holds that, if, after hearing a full and truthful statement of the condition of the property insured from the owner, an agent of an insurance company fills the blanks in a printed form of application furnished him by the company with misrepresentations and false statements, and the insured signs the same without knowing its contents, and without other fault than that he relied upon the agent to write down his statements correctly and pays the premium, obtains a policy and sustains a loss, that the company was estopped from denying its liability under the policy. In this case the pleadings present no issue as to misrepresentation, nor under the facts disclosed would the questions involved be materially affected, if they did. *Kruger* v. *Western F. & M. Ins. Co.,* 72 Cal. 91, 1 Am. St. R. 42, is also relied upon, but the court in that case found expressly that the agent was a general agent of the company, and that he had the power to waive the conditions of the policy. *Continental Ins. Co.* v. *Ruckman,* 127 Ill. 364, 11 Am. St. R. 121, is also cited by the respondent; but in that case the 121, is also cited by the respondent; but in that case the agency was general and not special, and the learned editor has appended a note in which it is stated that an insurance company has power to restrict the powers and duties of its agents as it may choose; and when their authority is expressly limited and restricted by the policy which the assured receives, such restrictions and limitations must be regarded as binding upon him. Citing *Cleaver* v. *Traders' Ins. Co.,* 65 Mich. 527; 8 Am. St. R. 908, and note 913.

But in addition to what has been said it is not perceived, when fraud, or mistake, or other imperfection in the writing is not put in issue by the pleadings, on what ground this evidence could be admitted. The statements relied upon were contemporaneous with the writing. In such case they are merged in the writing and cannot be proven unless under particular circumstances, which do not appear

XIX. Or.—18.

here.   This is the common law and was deemed so import-
ant by the legislature that it is enacted as a part of the
statute law of this State.   Hill's Code, § 692.

2.   The next error complained of is the refusal of the
court to allow plaintiff to testify on his cross-examination
by defendant's counsel, as to how much more furniture he
had at what was known as his middle ranch than at
the place that was burned.   This ruling was not error.
The facts sought to be elicited are supposed to have
some bearing upon the question of the occupancy of
the building insured, but we think otherwise.   They were
too remote.   We think the facts elicited show that the
plaintiff had all the necessary furniture to answer his
purposes at both places, and whether he had a little more
or a little less at one place or the other had no bearing
upon the question of occupancy.

3.   The next error relied upon by the appellant is the
giving of the following instruction to the jury by the court:
"The court charges you, that if you find from the
evidence that the plaintiff made a statement in writing to
the company, although such statement was not verified, if
the company acted upon it and sent an adjuster to settle
or adjust the loss, then the company will be deemed to
have waived that condition in the policy."

The pleadings present no issue whatever on the subject
of waiver by the company of this or any condition in the
policy.   The plaintiff alleges that he duly performed all
the conditions of said contract on his part to be performed.
This he might do under section 87, Hill's Code, but the
same section also provides that if such allegation be contro-
verted, the party pleading shall be bound to establish ⌄n
the trial the facts showing such performance.   On the
trial in this case the plaintiff made no attempt to establish
the facts showing performance, but what he undertook to
prove was that the defendant had waived the performance
of a particular condition of the policy, and it was on that
subject—an issue vital to the plaintiff's case, and not in
the pleadings—that the court instructed the jury.   On this

branch of the plaintiff's case the court by this instruction made it possible for the plaintiff to recover on a question of fact nowhere alleged in the pleadings. *Warren* v. *Bean*, 6 Wis. 120. But this question was not made in the argument, and we will not place our decision upon it. We only refer to it to indicate what we conceive to be the correct method of pleading in such cases, and to avoid misconception.

There is no doubt that the policy declared on by the plaintiff makes certain proofs to be furnished by the assured in case of loss, conditions to be complied with by him before he has any legal claim against the company for loss, and in such case all the conditions must be substantially, if not strictly, complied with, or no recovery can be had. 2 Wood on Fire Ins., § 436, and authorities there cited. It is equally as well settled that the failure to make such proof may be waived by the company. 2 Wood on Fire Ins., § 439, where the authorities are carefully collated.

One of the conditions of the plaintiff's policy in case of loss or damage, was that he was to perform certain things in respect to the damaged property and then give immediate notice and render a particular account thereof in writing to the company, stating the time, origin and circumstances of the fire, the occupancy of the building insured, or containing the property insured at the time of the loss; the whole value of the ownership of the property insured, and all encumbrances thereon; the amount of the loss upon each article; other insurance, if any, giving a copy of all policies—all of which shall be verified by the affidavit of the assured and claimant. And here is what the plaintiff says he did after the fire, as recited in the bill of exceptions: That at the time the fire occurred, which was the night between the ninth and tenth of July, he was at the mountains to get two loads of wood to make his home there; that after the house was burned, two or three days after, he went to Mr. Reeder to notify him. Mr. Reeder was not there, but his brother was. The second time he went to see Mr. Reeder he was there, and he showed wit-

ness a letter he had received from the company and he read it to him.   When he went to Reeder he said he would write a statement for witness; that witness wrote to the company himself and received a letter from them; that after this Reeder came out to the place, and also Mr. Beeler, but that he was in Walla Walla at that time.   That he offered to make a statement to Mr. Reeder in reference to this matter.   On his cross-examination the witness said that he did not know whether he wrote the letter to the company right away after the fire or not; that he could not state the date; that he did not know whether he wrote once or twice; that he wrote as soon as Mr. Reeder told him to do so; that he told Mr. Reeder that he could not write very good, but Reeder told him to do as good as he could, and so he wrote.   After being recalled the plaintiff testified that he receive a letter from defendant, which he delivered to Mr. Tustin.   Mr. Tustin was then called and testified that the plaintiff delivered a letter to him with the policy; but after making diligent search in his office, and at all places where he kept such papers, he was unable to find the same.   The witness was then asked to state the contents of said letter, and without giving date he said that as near as he could remember it read:

"*Mr. John Weidert*—DEAR SIR:   We have received your letter from Mr. Reeder as to your loss by fire, and we will send an agent as quickly as possible to value the damage." They said Mr. Reeder was agent.   It does not appear that this paper was signed by any person.   The witness further testified that Beeler was named in that letter; that he had gone to Mr. Reeder and told him to write, and afterwards Reeder told him he had written.   Mr. Paul testified that Mr. Beeler came to the place with Mr. Reeder and that the plaintiff was away from home; that they staid about half an hour and said they wanted to see the plaintiff very bad; after dinner they went down toward the house that was burned.   Beeler told the witness that he wanted to see Mr. Weidert; that he wanted to settle it up; that the plaintiff was expected home from Walla Walla that evening,

and they said they wished they could stay, but they had to be in Portland that evening and could not wait; he just said he wanted to settle up from that fire. This witness on his cross-examination said that Beeler told him that he wanted to see the plaintiff about the fire and settle up; that he did not say anything about the money, but only said that he wanted to see about the fire and how it was, and that he wanted to settle up; that he went down to the house that was burned, then he asked where the road was, and that was all he said. Mrs. Weidert testified substantially to the same facts as to Reeder's and Beeler's visit. The defendant having proven the plaintiff's signature to the following letter, offered the same in evidence:

NOVEMBER 2, 1888.

"*To the State Insurance Company*—DEAR SIRS: I just met with Mr. Reeder on the twenty-ninth of October. We have missed one another before. Even when Mr. Reeder was at my place I was to Walla Walla; that is twenty-six miles from my place. I did not know that he was coming that day or else I would have stayed at home. Mr. Reeder wanted me to state something to you about my business.

"About this place where this house has been burned: This house I bought for my special home on account of there being a good house and good water on it. I could have insured it for $300 more than I insured it for, but I did not want to. Where I lived before I had to haul water. I could not move in that house when I bought it. It was rented till the first of March. This family moved out, and I moved in this house till I was done plowing. I have got ranches two and three miles apart. Then I moved on to the next place and camped there, to plow there. This time the man who had the house before came to me and said: 'Mr. Weidert, can I rent this house from you till the first of July?' I said 'No; I think I will get done here by the first of June, and then I want to move back again; but if you don't disturb the furniture you can move into it till

the first of June, and then I want to move back.' Accordingly he says: 'All right; it accommodates me very much.'

"I had another place two miles further north, which I had hired to plow, but the last week in May this man sent me word that he could not plow the ground for me, so I had to finish this place and go there and plow that myself. I had to camp on the bunch-grass and cook on a camp fire.

"The first of June came and this man came to me and said: 'Mr. Weidert, I cannot move by the first of June, and I would like to get ten or twelve days longer.' I says, 'All right, Mr. McNett; I don't think I can get back as soon as I calculated, on account of this plowing.' So he moved on the twelfth of June. I did not get done plowing on that place till the twentieth of June. Then we went to Walla Walla and visited our friends and picked berries, and canned them at the same time, because they don't haul well that far. By that time the Fourth of July came on, and we stayed over the Fourth, and we came back the seventh of July, when we finished plowing.

"Then we went to the mountains to haul a couple of loads of wood back home. It got a little late when we came back from the mountains, so we left our wagons standing where we stopped to take them home the next day. And that day our turn came to have our hay cut, and I had to go and show where to cut it. I told the hired man to fetch our dinner and help cut some hay when he came. He drove by there with a hack to bring something. When he came up to us he said, 'We are moved now; the house is burned down,' and I and the man cutting hay for me dropped everything and walked there and we found it burned down. So we had to move down where we were cutting hay at that time, where there was an old shanty standing.

"I had to move my family in town this winter to stay till next spring. This shanty is too cold. I was waiting on this new railroad to bring some dry lumber up here. They don't bring dry lumber this fall, and will not till

next spring, so I can't build till next summer. We have got to haul the lumber with wagons too far here.

"The eighth of July (that was Sunday) we were in the house to straighten things up in the house, so that we would not be bothered when we came from the mountains. We were there pretty near every Sunday to look after our things and make our home there.

"Gentlemen, that is as near as I can state it to you. I asked Mr. Reeder if it would make any difference if I was out to my other places at work, and he said, 'No, sir.' We have never left the house more than a week without going back and taking care of things there. Please write me an answer on this statement as soon as possible.

"Yours truly,                                                  JOHN WEIDERT.

"VANSYCLE, Umatilla county, Oregon."

On the question of waiver the policy declared on contains this statement: "It is expressly agreed that if any person or persons on behalf of the company shall aid or attempt to aid the claimant in making proofs of loss, so-called, or examining the claimant, or otherwise investigating such claim, that in either of such events, no conversation, promise, agreement or understanding of such person with such claimant or any one else on his or their behalf, or notice given to, or knowledge obtained by such person or persons, shall be in any manner binding on the company, or regarded as a waiver or estoppel of any condition of this policy or the law applicable thereto; and that no person has any authority or power to make any promise or agreement to pay any loss or claim under this policy or to waive any conditions of this policy or the law applicable thereto except the president or secretary of this company, and then only when the same and all the detailed terms and conditions thereof are reduced to writing and duly signed by said president or secretary."

The instruction under consideration wholly ignores the element of time within which proof of loss should be made. By the terms of the policy it was to be *immediately* after the loss, which I have no doubt required diligence

on the part of the assured. But the time could doubtless be waived as well as any other condition of the policy, and the question, therefore, is whether or not there was any evidence of waiver which authorized the court to submit that question to the jury. Just when the plaintiff wrote to the defendant does not appear, nor does the evidence anywhere disclose the nature or contents of the letter he says he wrote sometime after the fire. It might be inferred from the contents of the letter which he says he received from the company, that it said something about the plaintiff's loss, but that letter was not signed by any person and it does not appear whether it really came from the company or not. More than that, the letter which the defendant received from the plaintiff of November 2d, and which it conceded that he wrote, tends very strongly to show that the plaintiff did nothing after the fire by way of submitting proof of loss until he wrote this letter. The first paragraph of that letter admits of no other reasonable interpretation. But taking all the oral evidence together with the letter, does it tend in any manner to prove a waiver? A waiver in this sense is in the nature of an *estoppel.* The company must, by some act of an agent having real or apparent authority, have done or said something that induced the plaintiff to do or forbear to do something whereby he was prejudiced. It does not appear from this evidence that the company did anything of that kind in this case, nor does it appear that it acted upon any· statement in writing made by the plaintiff, or that it sent an adjuster to settle or adjust the loss. What relation Mr. Beeler sustained to the company does not appear. He may have been an authorized adjuster of the company, but if he was the fact does not appear from this record, and until such fact be shown, it is not perceived on what ground the company could be bound by his acts. But conceding that the record shows that he was such adjuster, the fact that he went to the place of the fire sometime after it occurred and inquired for the plaintiff, and said and did all the other things

which the evidence tends to prove, there is not enough shown to constitute a waiver. Section 439, 2 Wood on Fire Ins., sums up the result of the cases by saying: * * * "But generally it will be found that the delay has been induced by such acts and conduct on the part of the insurer or his agents as amounts to an estoppel rather than a waiver, and the general doctrine seems to be, and that more consistent with principle, that when the failure to comply with the condition is due wholly to the fault of the insured, the policy is dead and cannot be revived by anything short of a new consideration and an express waiver on the part of the insurer. And in the same section the learned author cites *Brink* v. *Hanover Fire Ins. Co.*, decided by the court of appeals of the State of New York, in which case the court said: 'If no proofs are served in time, and the insurer has done nothing to induce the omission, the insured has lost all rights under the policy, and the insurer is not bound to specify its defenses, nor does it waive those not specified.'"

4. But however this may be, there is another view of this subject that is decisive against the plaintiff on this question. An insurance contract, like every other contract, in the absence of fraud, illegality or mistake, must be so construed that every part of it shall have effect according to its terms. The intention of the parties must be gathered from the contract; if that be uncertain, the circumstances, surroundings, situation of the subject matter and other rules of construction, may be resorted to for the purpose of aiding the court in determining the meaning of the contract and the intention of the parties in making it. But when the import of the language of the contract is so plain as to leave no doubt whatever as to what the parties intended, the court has no discretion but to enforce it. Section 694, Hill's Code, states the rule, which is only declaratory of one of the first principles in the laws applicable to the construction of contracts: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in

terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." A party cannot protect himself from the consequences of his own fraud by contract, but in the absence of something of that kind, I fail to see any reason why the terms of the policy as to waiver should not be given full effect. This the trial court did not give or allow by the instruction under consideration, and the same was therefore erroneous.

5. At the conclusion of the plaintiff's evidence, the defendant moved for a non-suit because the plaintiff had failed to prove a case sufficient to be submitted to a jury, which was overruled, and this is assigned for error. All the evidence is in the transcript, but the great length of this opinion will only allow a very brief examination of this question. The plaintiff encountered the same difficulty here that he did in another part of his case. He alleged due performance of the agreement on his part, and then sought to prove a contemporaneous parol agreement as to the occupancy of the premises, which we have already indicated was objectionable; but on the argument here, the plaintiff's counsel insists that his evidence tended to prove an occupancy of said premises from the date of the policy to the fire. To test the correctness of this claim, I have carefully read all the evidence and think it fails to show such occupancy. The plaintiff testifies that he moved away from the place on about the twentieth of March or the first of April, he did not remember which, and that McNett moved in the next day or day after that, he did not remember which; that McNett lived there until the fifteenth or twentieth of June, and that after McNett moved away from the house, he, or his hired man, or some member of the family, was there at the house every day to see if things were all right. He further says he was at the house after the twentieth of June frequently until the house burned; that the big members of his family were there often; that

he was not there when it burned, and d. l not know how the fire occurred. On re-cross-examination the witness said he did not know whether Mr. McNett was at the house after the twelfth of June or not. He further said that some of the family were at the house every day; that they just went down there to see that nothing was destroyed. The fire occurred on the night after the ninth of July. Paul was also a witness, but his evidence adds nothing to what the plaintiff said. Conceding to the fullest extent all the facts that this evidence tends to prove, is any occupancy of said premises shown after McNett moved out? The appellant did not make the question as to whether McNett's moving into the house was a change in the tenancy within the meaning of the policy or not, and so we confine our inquiry simply to the question of occupancy after McNett moved out. In *Keith* v. *Quincy Mut. Fire Ins. Co.*, 10 Allen, 228, an instruction to the effect that it is not sufficient to constitute occupancy that the tools remained in the shop, and that the plaintiff's son went through the shop almost every day to look around to see if things were right, but some practical use must have been made of the building, and that if it thus remained without any practical use for the space of thirty days, it was, within the meaning of the policy, an unoccupied building for that time, and the policy became void, was approved by the supreme court of that State. So in *Ashworth* v. *Builders' Mut. Fire Ins. Co.*, 112 Mass. 422, it was held that a dwelling-house and barn are unoccupied within the meaning of an insurance policy which provides that buildings unoccupied shall not be covered by the policy when the house is only used by the insured and his servants for the purpose of taking their meals there when engaged in carrying on a contiguous farm, and the barn is only used for the purpose of storing hay and farming tools. So also in *Corrigan* v. *Connecticut Fire Ins. Co.*, 122 Mass. 298, it was held. in an action on a policy which provided that if the house should "remain vacant or unoccupied for the space of ten days without written notice to and consent of the company," it was not

erroneous to instruct the jury that, if the house had not been used as a dwelling-place by some one within ten days of the loss, the policy would be void; and that if the former occupant had moved with his family into another house where they slept and took their meals, the fact that some of the furniture remained in the house, and the key had not been surrendered to the landlord, until within the ten days, does not constitute an occupancy of the premises. And in *Herman* v. *The Merchants' Ins. Co.*, 81 N. Y. 184, it was held that a dwelling-house was unoccupied when no one lives therein, but that it was not necessarily vacant. And in *Herman* v. *The Adriatic Fire Ins. Co.*, 85 N. Y. 162, it was held that for a dwelling-house to be occupied within the meaning of a policy, which contained a condition declaring it void in case the premises "became vacant or unoccupied, and so remained for more than thirty days without notice and consent of this company in writing," it must be used by human beings as their customary place of abode. *Cook* v. *Continental Ins. Co.*, 70 Mo. 610, was also an action on a policy which was to become void if the premises should be unoccupied. The insured left the house and went elsewhere to reside, taking only part of her furniture. She left a man in possession with instructions to sleep in the house at night. This man quit the premises and several days afterward a fire occurred, no one being in the house at the time; *held*, that the house was unoccupied and that the policy was void. Other authorities hold the same doctrine. *Ætna Ins. Co.* v. *Meyers*, 63 Ind. 238; *Dennison* v. *Phœnix Ins. Co.*, 52 Iowa, 457; *Fitzgerald* v. *Conn. Fire Ins. Co.*, 64 Wis., 463.

Under the facts disclosed at the trial and in the light of the authorities cited, I think the conclusion irresistible that the building in question was not occupied at the time of the fire. In such case, the policy, by its terms, stood suspended. For the reason that proof of loss was not made as required by the policy and because the facts show that the building was not occupied at the time of the fire, the circuit court erred in refusing the defendant's motion

for a non-suit.    The judgment will therefore be reversed and the cause remanded with directions to allow the defendant's motion for a non-suit.

THAYER, C. J., being directly interested in the result, did not sit and took no part in the decision of this case.

LORD, J. ·   I concur in the result only