STATE MUTUAL INSURANCE COMPANY *v.* LATOURETTE.

Opinion delivered February 21, 1903.

1. APPEAL—QUESTION NOT RAISED in the trial court will not be decided on appeal. (Page 246.)

2. INSURANCE—WAIVER OF WARRANTY.—A warranty in a contract of insurance that the title to the property insured was in the assured is waived where an authorized agent of the insurer, before the policy was delivered and the premium accepted, was informed that the title of the property was in the assured's wife. (Page 247.)

3. INSURANCE AGENT—AUTHORITY.—A local agent of an insurance company, having authority to receive and forward applications, to deliver policies, and to accept premiums, has authority to waive a warranty in a contract of insurance that assured's title to the property insured is absolute, although the application for insurance, made a part of the contract, stipulates that the insurer "will not be bound by any representations of the applicant or promise of the agent or solicitor not contained therein." (Page 247.)

Appeal from Craighead Circuit Court.

FELIX G. TAYLOR, Judge.

Affirmed.

STATEMENT BY THE COURT.

The appellant brought suit to recover for loss by fire to certain property in Jonesboro, Ark., in the sum of $500.

To this complaint the defendant filed the following answer in substance: It admits the execution and delivery of the said policy of insurance and the loss of the buildings by fire; but denies any and all liability thereon, because the said plaintiff made an application to defendant to insure the above described property, in which said application were the following questions and their answers by the plaintiff: "Q. Is your title to property to be insured absolute, unqualified and undivided? A. Yes." And in said application there is the following clause or paragraph, to-wit: "This application shall be considered a part of the contract of

insurance and a warranty by the applicant, and it is further understood and agreed that this company will not be bound by any representations of the applicant or promise of the agent or solicitor not contained therein; and I further agree that the answers to all questions are my own, or by my express authority. I warrant the foregoing application to contain a full and true description and statement of the condition, situation, value, occupation and title of the property proposed to be insured in the State Mutual Insurance Company, and I warrant the answers to each of the foregoing questions to be true, full, complete and correct, and the same shall be a part of my contract of insurance in said company." From which it will be seen that the application was made a part of the contract of insurance, and the answers were warranted to be true; but said answer was not true, and was false in this: That at the time said insurance policy was issued the title was vested absolutely in Mrs. Mary Latourette, wife of the said L. Latourette, and by reason of said answer and said warranty in application, made a part of the contract of insurance, said insurance policy was absolutely void. There is the following clause or paragraph in said policy of insurance: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." That by reason of said fraud and misrepresentation as to title and ownership the said policy was void from its inception, and never had any binding force.

It is admitted that the title to the property insured was in Mrs. Latourette at the time of the insurance and at the date of the loss. It is admitted that the insured building was burned, and that the plaintiff should recover the full amount or nothing.

Plaintiff testified as follows: "No application for this insurance was written; I did not give any agent such application. Mr. Cooley was the agent through whom I took out the insurance. "Q. What, if anything, was said at the time in regard to the title of the property? A. Mr. Cooley brought the policy to the store all fixed up, and wanted to collect the money at the same time; and when he showed the policy he was swearing me it was my property. My wife and Charlie, my son, were present. And

I said, 'I will swear to it, but that property is in Mrs. Latourette's name;' and he said: 'That don't make any difference; that's your homestead.' I said the rest of my property was in my name, and this was in Mrs. Latourette's, and he said it didn't make any difference."

CROSS-EXAMINATION.

"I made an application for insurance before I got the policy. I signed it." Witness here identifies application as the one he signed; and it is made part of the evidence. "I did not inform Mr. Cooley before the policy was sent that the title was in my wife; but I told him so when he brought the policy to my store to deliver it. I know Mr. L. Hirsch. He came to Jonesboro a few days after the fire. Mr. Parsons had garnished the money. I did not say anything to Mr. Hirsch about the title of the property, whether it was in me or my wife, when he came to settle the loss. I don't know whether he knew the title was in me or my wife."

"Q. Now, I understand you to say that you informed Mr. Cooley, before the policy was sent, that the title was in your wife?"

"A. No, sir. When he brought the policy, I told him the land was in my wife's name, and the house in mine. He said: 'That don't make any difference.'"

Charles Latourette testified for plaintiff as follows: "I am the son of the plaintiff; was present when Mr. Cooley brought the policy of insurance to my father. My father stated to Mr. Cooley that the title to the property was in Mrs. Latourette's name. Mr. Cooley said that did not make any difference."

H. M. Cooley testified for defendant as follows: "I live in Jonesboro. I was the local agent representing the defendant insurance company about a year ago. I took the application." Witness identifies application as the one he took in the case at bar. "At the time I took the application from Mr. Latourette I knew in whom the title to this property was, only by the way he answered these questions. He stated in the application that his title to the property to be insured was absolute, unqualified and undivided. I read all the questions there on the application, and he answered them as I read them. As I read the questions he answered, and I wrote his answers. I would read the printed part to him, and his answers were written down by me at the time. That is all I knew about the title until the deputy sheriff served a writ of garnishment on me garnishing the State Mutual Insur-

ance Company after the property was destroyed by fire, and at that time I learned from information that the title was in Mrs. Latourette. That was the first information or knowledge I had of the fact that the title was in Mrs. Latourette. The scope of my agency here and my duties were to take an application for insurance and forward it to the company subject to their approval. When they approved it, they issued the policies, and sent them to me for delivery. I had no power to issue policies. Mr. Latourette made no statement to me when I delivered and collected for his policy. I read the questions to Mr. Latourette and wrote the answers down."

L. Hirsch testified: "I was secretary of the defendant company at the time this policy was made, and at the time of the loss. I had the management of the business. I am familiar with this transaction. None of the officers of the company knew that the title to this property was in Mrs. Latourette. We knew about the title only by means of the application sent us. At the time of the issuance of this policy I supposed that the title was in Mr. Latourette. I know Mr. Cooley. He has no authority to sign policies. His authority was to solicit insurance by application only and forward them to the home office in Little Rock. If the application was approved, I issued the policy, and forwarded to him for delivery and to collect the premium."

L. Latourette, the plaintiff, testified as follows: "Mr. Cooley did not read me any question in the application at the time I signed it. He did not read the application to me at all. He did not ask me any questions. He did not read me a single question in the application. I did not know what he was putting in that application. I signed the application."

This was all the evidence introduced at the trial, and thereupon the court gave instruction 1, as asked by the plaintiff, as follows:

"If you find from the evidence that, prior to the delivery of the policy in evidence, the plaintiff stated to Mr. Cooley, the agent of the defendant, that the title to the lot upon which the house was situated was in Mrs. Latourette, and not in the plaintiff, and that Mr. Cooley, as agent of the company, said to Mr. Latourette that it would make no difference whether the title to the lot was in him or his wife, and delivered the policy to him, then your verdict must be for the plaintiff."

To which instruction the appellant at the time excepted, and thereupon the court instructed the jury as follows:

"1. The jury are instructed that if they believe from the evidence that before or at the time the insurance policy was delivered no agent of the company had any knowledge of the fact that the title was in Mrs. Latourette, instead of L. Latourette, the plaintiff in this case, you must find for the defendant."

*Jos. W. House* and *M. House,* for appellants.

The policy is avoided by the representation and warranty in the application that the title was in the insured, whereas it was in his wife. 67 Ark. 590. The soliciting agent had no power to waive the falsity of this representation and warranty. 117 U. S. 528; 78 Fed. 527; 92 Fed. 503; 17 Mo. 247; 41 Conn. 168; 136 N. Y. 547; 30 Pa. St. 331; 41 N. J. L. 568; 35 N. J. L. 366; 7 Gray, 370; 22 Conn. 235; 67 Cal. 621; 36 Minn. 433; 70 Wis. 1; 60 S. W. 576. A waiver, to be binding, must be made without misapprehension of facts. 48 Ark. 445. The rule governing waiving by agents, as applied to mutual companies, is different from that applying to others; and the provision requiring waivers to be made in writing and by certain officials is binding. 4 Allen, 116: 9 Allen, 329; 54 N. W. 21; 17 Allen, 241; 1 Allen, 296; 14 Gray, 209; 10 Cush. 449. It was the duty of the insured to read and become acquainted with the representations and requirements in his contract and application, and he is thus put on notice as to the falsity of his answer. 58 Ark. 281; 54 Ark. 78; 58 Ark. 542. It was error to refuse the third instruction prayed by appellant. 117 U. S. 528; 25 Mo. App. 425; 39 Pac. 590. Appellant had no insurable interest in the property, and hence the policy was void. 120 Ind. 554; s. c. 22 N. E. 430; 17 Au. 304; 83 Me. 362; 53 S. W. 442; 38 Mich. 548; Ostr. Fire Ins. 212. The policy was void *ab initio* because of false representations, and could only be revived by a new contract upon new consideration. 16 S. W. 470; 23 Mich. 486; Ost. Fire Ins. 754, 756, 757.

*Lamb & Gautney,* for Appellee.

Appellant is bound by the knowledge as to the title received by its agent in the usual course of business, while acting within the scope of his agency. 52 Ark. 11; 64 Ark. 257; 81 Mo. App. 201.

HUGHES, J., (after stating the facts). It is contended by the appellant that the husband has no insurable interest in his wife's

property, and that L. Latourette had none in Mrs. Latourette's property in this case. But this question was not raised in the pleadings below in this case, nor in the instructions asked, and it would therefore not be proper for us to undertake to decide that question here on this appeal.

The only question here is one of waiver. When the agent was informed by L. Latourette before delivery of the policy that the title to the property was in Mrs. Latourette, and in reply thereto said that that made no difference, and delivered the policy thereafter, and collected the premium, he thereby waived the provisions of the policy in regard to the title of the property being in L. Latourette.

Upon this point there is conflict of testimony as to what the agent said, but this was settled by the jury, and we cannot disturb their verdict on a question of fact, there being undisputed testimony to support it.

It is contended that Cooley, the agent, was only a local agent, with no authority or power to waive anything, but we find he was agent to forward the applications, to receive the policy, and to deliver it and accept the premium, and that he made this waiver in delivering the policy, and that it was made while performing a duty within the scope of his agency.

In *Insurance Company* v. *Brodie*, 52 Ark. 15, this court, quoting approvingly from *Insurance Co.* v. *Williamson*, 13 Wall. 222, said: "The powers of the agent are, *prima facie*, co-extensive with the business entrusted to his care. * * * An insurance company establishing a local agency must he held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment as if they proceeded from the principal." In *Peoria M. & F. Ins. Co.* v. *Hall*, 12 Mich. 202, Judge Christiancy said: "Notice to the agent is notice to the principal. * * * If he knew that powder was kept at the time of the insurance, or to be kept during its continuance, the company must be regarded as having known it also. They had power to waive the condition, and by taking the premium and issuing the policy with such notice or knowledge they must be regarded as having waived the condition which prohibited its keeping. It would be a gross fraud in the company to receive the premium for issuing a policy on which they did not intend to be liable, and which they intended to treat as void in case of loss."

"The issue of a policy by an insurance company, with a full

knowledge of all the facts affecting its validity, is tantamount to an assertion that the policy is valid at the time of its delivery, and is a waiver of the known ground of invalidity." *Brodie* v. *Insurance Co.* 52 Ark. 16, and cases cited.

We therefore conclude that the statements in the application by L. Latourette that his title to the property to be insured was "absolute and unqualified and undivided," though made a warranty, was waived when the agent was informed by Latourette before the policy was delivered that the title to the property was in Mrs. Latourette, to which the agent replied that it made no difference, and delivered the policy, and collected the premium thereon, and that the company is estopped to insist that this rendered the policy invalid. The judgment is therefore affirmed.

BUNN, C. J., dissents. Cooley was only a limited agent, and was expressly not authorized to waive anything for the company.