Argued April 2, decided April 16, rehearing denied May 14, 1912.

## JOPLIN *v.* NATIONAL LIVE STOCK INS. ASSOCIATION.

[122 Pac. 897.]

INSURANCE—POLICY—LIABILITY—INSURANCE ON ANIMAL.

1. Under an insurance policy on a horse, providing that the insurer would not be liable for loss of the animal if caused, directly or indirectly, "by order of any civil authority," the insurer was not liable where the owner, on the advice of a veterinarian, caused the horse to be shot, because it had an incurable disease, likely to be communicated to other animals, and where it appeared that, if he had immediately notified the proper state officers of the horse's condition, as required under Sections 5651, 5652, L. O. L., it would have been killed by order of civil authority.

INSURANCE—POLICY—ALTERATION—LIABILITY.

2. It did not affect the question of the insurer's liability that its agent had consented to the killing of the horse, where such policy also provided that any agreement by an agent altering the policy should not be binding, unless authorized by the home office; no such authority being shown.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by William T. Joplin and Charles Meeks, partners, doing business under the firm name of Joplin & Meeks, against the National Live Stock Insurance Association, a corporation, to recover upon a policy issued by defendant, insuring the life of a horse owned by plaintiffs.    The complaint alleges that on February 22, 1909, defendant issued a policy of insurance, by which

it agreed, in consideration of a certain premium paid by plaintiffs, to pay to plaintiffs, in the event of loss by death of a horse named "Prince," the sum of $200; the policy being for the term of one year. It also alleges the payment of premiums and proof of loss and the death of the horse on September 26, 1909. There was a general denial of all the allegations of the complaint, except the incorporation of plaintiffs and the issuance of a policy of insurance.

The insuring clause of the policy is to the effect that the property "is insured during the life of this policy against loss by death from disease, fire, lightning, tornadoes, cyclones and every other casualty which necessitates the death of any animal upon which insurance is herein provided, when in the event all due care shall have been taken to save the life of such animal and nothing shall have been done to endanger the same by the insured, his agents or employees." Another stipulation is as follows: "This association will not indemnify or incur any liablity for loss of any animal caused directly or indirectly by invasion, insurrection, riot, war or any uprising necessitating martial law or any other usurpation or order of any civil authority."

The animal became infected with glanders, and was shot to death by a veterinary surgeon in the employ of defendant, with the advise and consent of defendant's managing agent and the consent of plaintiffs. Plaintiffs had a verdict and judgment, and defendant appeals.

REVERSED: REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Sweek & Fouts,* and *Mr. J. F. Shelton,* with an oral argument by *Mr. Shelton.*

For respondent there was a brief and an oral argument by *Mr. Robert J. O'Neil.*

Sig. 18

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The findings in this case are such that a judgment should have been given for defendant. The horse did not die by disease; nor was its killing necessitated by any casualty. He was shot by consent of defendant's agent and veterinarian and the plaintiffs, because he had an incurable disease which was likely to be communicated to other animals. Under Sections 5651, 5652, L. O. L., it was the duty of plaintiffs to have immediately notified the State Board of Health or the State Veterinarian of the fact that the horse was infected with an incurable contagious disease, and it would have been the duty of such officer to have caused the animal so infected to be killed. In such case, the killing would have been "by order of the civil authority," and by the terms of the policy would have created no liability on the part of defendant. If plaintiffs chose to disobey the statute and allow other parties to do for them what the civil authorities would have done in any event, they cannot thereby create a liability which would not have existed, had they complied with the law. *Tripp* v. *Northwestern Live Stock Ins. Co.,* 91 Iowa 281 (59 N. W. 1).

2. It was found by the court that the killing was done by consent of plaintiffs and the managing agent of defendant; but this is not pleaded, and the authority of the agent to bind the company by introducing a new term into the contract is not shown. The policy contains this stipulation:

"No agreement either verbal or otherwise contrary to these stipulations made by any agent or employee shall be binding on this association unless authorized by the home office."

The complaint does not state that the home office ever authorized any of its agents to agree to the killing of the animal; nor is there any finding to that effect.

The judgment is reversed, and the cause will be remanded, with directions to the lower court to enter a judgment for defendant.

REVERSED : REHEARING DENIED.