Argued February 27, reversed and remanded March 25, 1919.

## SYKES v. SPEROW.

(179 Pac. 488.)

**Principal and Surety—Notice to Agent.**

1. Where a written notice of a subcontractor's failure to carry out his agreement was made to the agent of the surety company, it must be presumed that the agent performed his duty and actually forwarded the notice to the home office.

**Principal and Surety — Contract—Notice of Principal's Default—Method of Notice.**

2. Assuming that notice of principal's failure to carry out his agreement reached surety company at its home office in proper time, any difference in mere manner of transmitting it from method provided in contract was merely technical and trivial, and without injury or prejudice to defendant surety company.

Principal and Surety—Notice of Default—Waiver by General Agent.
3. One who, under Section 4675, L. O. L., is the only authorized general agent and representative of a foreign surety company, may waive or qualify a provision in the surety contract providing for service of notice of principal's default directly upon the surety company, and have such notices sent to himself as agent, notwithstanding a contract provision against waiver, except by writing executed by president or vice-president under corporate seal.
[As to discharge of surety on fidelity bond by failure of employer to notify surety of delinquency of employee, see note in Ann. Cas. 1912D, 1286.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

The plaintiff, who is a contractor, took the contract for building an office building at La Grande, Oregon. He subcontracted the cement work and the plastering to the defendant, Sperow, at the agreed price of $1,300. One of the conditions of this subcontract, was that Sperow was to protect the plaintiff against all future liens and claims of like nature.

To secure the plaintiff on this contract, the said defendant, Sperow, furnished plaintiff a surety bond, executed by himself and the defendant, the National Surety Company. This bond was in the sum of $650.

The defendant, Sperow, lived at Portland, Oregon, and did not go to La Grande, but proceeded with the work through an agent sent to that city.

According to allegations of the complaint, the defendant, Sperow, did not protect plaintiff against liens on the building, and it is alleged that the plaintiff, in order to comply with his contract to the owners, was compelled to, and did pay out on such liens and lienable claims, the sum of $541.70. To recover said sum, this action is brought against the defendant, Sperow, and the defendant, the National Surety Company, jointly.

The bond in question contained the following provisions:

"2d. The obligee shall at the times and in the manners specified in said contract, perform all the covenants, matters and things required to be by the obligee performed, and if the obligee default in the performance of any matter or thing in this instrument, or in said contract agreed or required to be performed by the said obligee, the company shall thereupon be relieved from all reliability hereunder.

"3d. If said principal, shall in any manner, default in the performance of any matter or thing in said contract, specified to be by said principal performed, the obligee shall immediately so notify the company. * *

"7th. None of the conditions or provisions contained in this instrument, shall be deemed waived by the company, *unless the written consent to such waiver,* be duly executed by its president or vice-president, and its seal be thereto affixed duly attested.

"9th. All notices and other evidence required by this instrument to be furnished by the obligee to the company, *shall be in writing and shall be forwarded by registered letter addressed to the company at its principal offices in the city of New York.*"

When it became apparent that the defendant, Sperow, would not be able to, or would not comply with his contract, the plaintiff through his agent, prepared notices in writing and mailed them in a registered letter, addressed to the National Surety Company, New York, *care of Frank E. Smith & Co., Portland, Oregon.*

Frank E. Smith & Co. were the general agents of the defendant, Surety Company, in the State of Oregon, duly appointed under the statute. This general agent seems to have taken the notices from the postoffice at Portland and signed the returned registered receipt. What was done with them and whether or not they were forwarded to the Surety Company at New York,

is not directly disclosed by the evidence, and is a matter of inference and presumption.

The defendant claims that the bond was forfeited *by reason of the failure to send these notices direct to the Surety Company at its home office in New York,* as provided by the contract. The plaintiff on the other hand claims that, Smith, the general agent of the company, waived the manner of serving the notices, by requesting the plaintiff to send them through him; and introduced direct testimony, that there was such an arrangement between Smith and himself, and that the notices were sent in the way they were, in compliance with that arrangement. He also claims, that because it was the duty of the agent upon receiving the notices, to forward them immediately to the principal, the presumption arises, that he performed his duty and that the notices were actually sent to the defendant's home office, and received there by it.

There was a motion for a nonsuit which was sustained by the court, apparently upon the ground, that the contract was forfeited by the failure of the plaintiff to forward the notices to the defendant company, in the manner specified in the contract.

The important question presented here is, whether or not the general agent of the company in the State of Oregon could, under the provisions of such a contract, waive the manner of serving the notices, and agree to a service upon him as its agent in Portland, and whether the mailing of these notices, directed to the defendant at its home office in care of its agent at Portland, was a sufficient compliance with the contract.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. George C. Johnson* and *Mr. David P. Mathews,* with an oral argument by *Mr. Johnson.*

For respondents there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. T. S. Robinson,* with an oral argument by *Mr. Allen.*

BENNETT, J.—It is our judgment that the motion for nonsuit should have been denied.

1, 2. We might place our conclusion in this regard upon the presumption that the agent had performed his duty and actually forwarded the notices to the home office. In *Dight* v. *Chapman,* 44 Or. 278 (75 Pac. 589, 65 L. R. A. 793), the court in discussing the rule, that notice to agent is notice to his principal, says:

"The reason for this rule is based on the theory that it is incumbent on the agent to impart to his principal, all information that he may obtain which would affect his interest; and by invoking the presumption that such obligation has been performed, the conclusion is reached that the principal is chargeable with notice thereof."

Assuming, then, that the notice actually reached the Surety Company at its home office in proper time; any difference in the mere manner of transmitting it, from the method provided in the contract, would have been merely technical and trivial, and could have caused no injury or prejudice to the defendant. In *Bross* v. *McNicholas,* 66 Or. 48 (133 Pac. 784, Ann. Cas. 1915B, 1272), the court says:

"The law of suretyship has undergone a considerable change in late years. The day of personal suretyship is fast slipping away, and in its stead comes the corporate surety for profit. This new condition has brought about a new construction of the law. The rules as applied to the insured have been softened, while the rules applicable to the surety have been drawn more stringently. The reason, therefore, lies in the

very nature of the transformation. Formerly, a surety was an individual, or collection of individuals, actuated by beneficent motives to carry the burden of suretyship, receiving no profit or benefit; and, in consequence thereof, the law dealt tenderly with him or them. But, in this day and age of corporate sureties, when the burden is lightened by the payment of adequate premiums, and their final liabilities ofttimes secured by counter indemnity, the strictness of the old rule is relaxed, and the modern day surety company must show some injury done before they can be absolved from the contracts which they clamor to execute.''

And in *Leiter* v. *Dwyer Plumbing Co.,* 66 Or. 482 (133 Pac. 1183), it is said:

''In order for the surety company to escape responsibility, it should appear that such company has been prejudiced by a breach of the contract. The breach must not have been merely technical, but a substantial one, working a pecuniary disadvantage to the surety company, or depriving it of some protection or privilege reserved in the bond.''

3. But in addition to this it is our opinion that the general agent of the company had authority, under the circumstances in this case, to waive or qualify, a provision like the one in this contract, providing for the manner of serving notice of the default upon the surety company—assuming of course that the testimony of the plaintiff as to what occurred, was accurate and correct.

According to testimony offered by the plaintiff, Smith was the general agent of the surety company for the State of Oregon, both in fact and in law.

Section 4675, L. O. L., authorizing surety companies to do business in the State of Oregon provides:

''That it must appoint a resident *general agent* on whom legal service, if any necessary, may be made and

to whom all other agents of the company in the state, shall make reports and to whom a *general* power of attorney shall be executed.''

It is conceded that Smith was designated as such general agent, and in addition to this, the testimony on the part of the plaintiff, tended to show that he was such general agent in fact.

It is well settled that such general agent is the *alter ego* of the principal, and can perform any act or do anything that the principal itself could do or perform.

This is, and must be especially true of a foreign corporation having no corporate existence within the state, and necessarily, doing business in the state, solely through its agents, and having no power to perform any act or do anything in any other way. To say that such a corporation (in the absence of direct legislative power) may, by an obscure provision on the back of its contract, or indeed by any provision on the contract, entirely upset the general principles of the law of agency, declared by the statute or by the common law, and make a statute of frauds of its own, create "a law unto itself" and so tie the hands of itself and its general agents, that there is, and can be, no power within the entire state which can waive or modify the mere mode or manner in which a notice of default is to be transmitted to its home office, would be going much too far, and would enable the Surety Company and its agents to trap the unwary business man without regard to time or season.

It may be said that a business man should read all these fine print provisions on the back of his contract, and it may be true, yet the constant litigation in the courts over such provisions teach us that as a rule they do not do so, and it may be safe to assume that seventy-five business men out of one hundred, if assured by

the general agent of a company that it would be all right and sufficient to deposit the notice with him, would accept without question his assurance in that regard.

These surety bonds are very similar in their nature in some regards to policies of insurance, and the courts have so construed them.

And in relation to such a contract, it was said by Mr. Justice ROBERT S. BEAN, in *Allesina* v. *London Ins. Co.*, 45 Or. 445 (78 Pac. 393, 2 Ann. Cas. 284):

"In determining whether there has been such a waiver, a court should not overlook the fact that insurance policies are prepared by the company, for general use, without reference to particular cases, and contain divers and sundry provisions and stipulations concerning different subjects. The contract is not like ordinary contracts between individuals, wherein every clause and stipulation is considered and agreed upon by the parties before the agreement is executed. A policy of insurance is prepared in the office of the company, and becomes binding on the assured because it is delivered to and accepted by him."

The authorities in other states are hopelessly divided as to the power of a surety or insurance corporation, to limit the power of its general agents, by the insertion of similar provisions in the bond or policy, and are involved in a perfect sea of contradiction, doubt and uncertainty in relation thereto.

Even in the same state the decisions of the courts are not always harmonious, and there seems to be few states in which decisions cannot be found, tending to support each of the divergent holdings. This results, no doubt, from the close division of the general authorities, and the cogency of the arguments on each side of the question.

In *Rule* v. *Anderson,* 160 Mo. App. 347 (142 S. W. 358), the action was upon a surety bond containing, apparently, the same provisions as are depended on in this case—in fact this same company was defendant and the bond seems to have been identical. There the plaintiff had taken the matter up with the manager of the defendant in Missouri, but had not notified the home office in technical accordance with the provisions of the surety bond. The court says:

"The contracts of surety companies are contracts of indemnity and, as such, fall under the rules of construction applicable to contracts of insurance. Since they are prepared by the companies, and generally abound with conditions and stipulations devised for the restriction of the obligation assumed by the company, such stipulations must not be extended to favor limitations providing for forfeiture of the contract. They must be strictly construed and no unreasonable right of forfeiture should be allowed."

"Finally it is argued by the surety that the failure of plaintiffs to give written notice of the breach of the building contract by the contractor in respect of the stipulation relating to the time in which the improvement should be completed, constituted a forfeiture of the bond. That point is sufficiently answered by the observation that this ground of forfeiture was one the surety could waive, and we hold that the conduct of the manager of the company's office at Kansas City, as depicted in the evidence of plaintiffs, was a waiver of the right to forfeit the contract on that ground. The knowledge of the manager of the true situation was the knowledge of the company and his acquiescence in the course pursued by plaintiffs was the acquiescence of the company whose *alter ego* he was."

In *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129 (39 N. W. 76, 1 L. R. A. 222), the case was an insurance one, and the policy had a clause providing that

it should become void, if the premises were left vacant, and it also contained the following provisions:

"And it is further covenanted by the parties hereto, that no officer, agent or representative of the company, shall be held to have waived any of the terms and conditions of this policy, unless such waiver shall be indorsed thereon in writing."

The property became and remained vacant—the agent was notified and permitted the policy to run, but made no indorsement on the policy, and did not notify the head office. The court says:

"The restriction here is so broad that it applies alike to every agent, officer, or representative of the company and as a corporation can only act through its agents, the substance of the provision under consideration, is that the company shall not be held to have waived any of the terms or conditions of the policy, unless it is waived or expressed by a written indorsement on the policy.

"That is to say in other words, that one of the parties to a written contract which is not required by law to be in writing, cannot subsequent to the making of the contract, waive by parol, provisions which had been inserted in the contract for its benefit. A contracting party cannot tie its own hand—so restrict its own legal capacity for further action,—that it has not the power, even with the assent of the other party, to bind or obligate itself by its further action or agreement contrary to the terms of the written contract. This is self-evident."

And it was held that the action of the agent bound the company notwithstanding the provisions to the contrary.

In *Kansas Ins. Co.* v. *Gray,* 43 Kan. 505 (23 Pac. 640, 19 Am. St. Rep. 150, 8 L. R. A. 70), the court says:

"It was stipulated in the policy that no agent of the company or any other person, than the president or

secretary, should have authority to alter or waive any of the terms or conditions of the policy or make any indorsements thereon, and all agreements of the president and secretary must be signed by either of them. This provision, however, may be modified by the company to the same effect as any other, and whatever the company may do, *can be done by its general agents.*"

To the same effect are the cases of *Weed* v. *Fire Ins. Co.,* 116 N. Y. 117 (22 N. E. 229); *Union Mutual Life Ins. Co.* v. *McMillen,* 24 Ohio St. 67; *State Mutual Ins. Co.* v. *Latourette,* 71 Ark. 242 (74 S. W. 300, 100 Am. St. Rep. 63); *Indiana Ins. Co.* v. *Capehart,* 108 Ind. 270 (8 N. E. 285); *Frane* v. *Burlington Ins. Co.,* 87 Iowa, 288 (54 N. W. 237); *Maryland Fire Ins. Co.* v. *Gusdorf,* 43 Md. 506.

On the other hand there are a considerable number of weighty authorities to the contrary of which the leading case is perhaps that of *Northern Ins. Co.* v. *Grandview Bldg. Assn.,* 183 U. S. 308 (46 L. Ed. 213, 22 Sup. Ct. Rep. 133).

In the new edition of Mr. Joyce's work on Insurance, Volume 2, Section 439, the learned author after an exhaustive consideration of the authorities on both sides, epitomizes as follows:

"We deduce, however, the rule, that the tendency of the weight of authority at the present day, is against making restrictions in the policy upon an agent's authority, conclusive upon the assured, and that the company, or any agent with general or unlimited powers, clothed with an actual or apparent authorization, may either orally, or in writing, waive any written or printed condition in the policy, notwithstanding such restrictions, and many cases apply this rule, even though the policy provides that a distinct specific agreement shall be indorsed thereon, or otherwise prescribes a particular mode of waiver or that only cer-

tain persons can waive, and there would be no valid reason why, if the agent may waive the restriction in the first case he may not in the latter.''

'And in support of the text, the author cites the decisions of twenty-eight different states. ,

So Mr. Elliott in his new work on Contracts (1913), says in Volume 5, Section 4168:

''A company cannot, by provision in its policy, restrict its power to act through its officers or general agents. Thus, a provision that the terms of the policy cannot be waived or changed by any 'officer, agent, or representative of this company' except in writing, is invalid in so far as it attempts to restrict the power of the company as well as its agent. This principle applies to a general agent as well as an officer of the corporation; as whatever the company can lawfully do can be done by its duly authorized agent.''

And in Pingrey on Suretyship and Guaranty, the Rule case from Missouri already cited is quoted with approval, as follows:

''Failure to give written notice to a surety company of the breach of the building contract in connection with which the bond was given, has been held to be waived where it appeared that the manager of the company's local office had knowledge of the true situation and acquiesced in the course pursued by the obligee.''

Even among the authorities which support limitations upon the power of the agents of such a company, there is a strong line holding, that such limitations only apply to the main conditions and provisions precedent to loss or liability, and not to provisions for the giving of notice.

In 14 R. C. L., Section 518, it is said:

''According to the prevailing view, the usual clause in a policy that no officer, agent or other representa-

tive of the company shall have power to waive any condition of the policy except such as may be indorsed thereon or added thereto, has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proofs.''

And a great number of authorities are cited therefor.

In Pingrey on Suretyship and Guaranty, Section 448, it is said:

''The condition in a surety company's bond requiring notice to the surety, of the principal's default, is one to be performed subsequent to loss or damage by reason of the default and for which recovery is sought. It is not essential to the binding force of the contract while it is running prior to default. Such a condition pertains to the remedy and, though precedent to the maintenance of an action, is not to be as strictly construed as one involving the essence of the agreement'': See, also, Joyce on Insurance, Vol. 2, § 437.

In this state it was held by Mr. Justice Strahan in *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809), that such a provision against waiver as the one in question, was valid; and that the insurance company could rely thereon. But this was really the decision of a minority of the court for Mr. Justice Thayer took no part in the decision and Mr. Justice Lord concurred in the result alone. Nevertheless, this case was followed in the case of *Egan* v. *Westchester Ins. Co.,* 28 Or. 289 (42 Pac. 611), in which such a limitation was held valid. A noticeable thing in this decision is, that no one of the great number of cases holding the contrary rule is in any way alluded to by the court, and apparently they were not called to its attention.

However, in *Schmurr* v. *State Ins. Co.*, 30 Or. 29 (46 Pac. 363), there was apparently a condition in the policy that there could be no waiver except by writing indorsed on the policy, and the same learned judge who wrote the opinion in the Egan case, says:

"The condition of the policy in this regard could be waived or modified by the defendant and such waiver or modification *could be made by parol altho the policy itself provided that it should be in writing.*"

In *Joplin* v. *National Live Stock Ins. Assn.*, 61 Or. 546 (122 Pac. 897, 44 L. R. A. (N. S.) 569), it seems to have been assumed by the court that a somewhat similar limitation on the power of agents was valid, but the court does not directly place its decision upon that ground.

In that case the policy only insured against "death by disease," and there was an attempt to make the policy cover the *killing* of an animal by virtue of civil authority, to prevent the spread of contagion. Of course this could not be done, and the question of waiver was hardly really within the case.

In *Farley* v. *Western Assur. Co.*, 62 Or. 42 (124 Pac. 199), the policy contained the following provisions:

"*No officer, agent or other representative* of this company, shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such conditions and provisions, no officer, agent, or representative shall have power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, *shall be written upon or attached* hereto.*"

The policy also provided, that in addition to notice of the loss, proof of the loss should be made within sixty days, and that the loss should not become payable until sixty days *after the proof of loss.* The assured

gave notice, but did not make proof of loss, neither was the proof of loss waived by writing upon the policy, as required therein.

However, the defendant sent an adjuster who undertook to agree with assured that the company would pay a certain sum if the assured would agree to accept it. This agreement, however, was not in writing and of course was not in any way indorsed upon the policy. Nevertheless, and despite the limitations of the policy, it was held by the court that the adjuster had authority to waive the provisions of loss. Mr. Justice McBRIDE, delivering the opinion of the court, says:

"The defense is unconscionable. Defendant sent its agent out to adjust and settle the loss, and he did settle the amount of it, and agreed that his company should pay it. He was not a mere adjuster or investigator. He had authority to settle, as defendant admits. Defendant cannot send out an agent clothed with such authority and trick unsuspecting claimants into a reliance on his representations, and then repudiate them by attempting to hide behind obscure clauses in the policy. There is no question as to the amount of the loss, and no serious question as to the representations made by defendant's agent; and, if defendant had required further formal proof, it should, in common honesty, have notified plaintiffs to furnish them."

In *Cranston* v. *West Coast Life Ins. Co.*, 63 Or. 427 (128 Pac. 427), and 72 Or. 116 (142 Pac. 762), the defense was, that the premium on the policy had not been paid at the home office of the defendant company in the City of San Francisco, or to any officer, having authority to receive it. The policy provided, that:

"All the premiums upon this policy are due and payable at the home office of the company in the City of San Francisco but may be paid to the agents of the company *producing receipts signed by the president, secretary, etc.* Only the *president or the vice-presi-*

*dent together with the secretary or assistant secretary*
and only in writing signed by them, have power on be-
half of the company to make or modify this or any con-
tract or to extend the time for making any premium
payment.''

And the application provided that the policy should
not take effect ''until the first premium shall have been
paid and accepted by the company or its authorized
agent.''

The only payment of premium was by the giving of
a note to one Waite Thurston, a local agent of defend-
ant. The case was once reversed largely upon a
question of pleading (63 Or. 444, 128 Pac. 427), but
finally came before the court in 72 Or. 116 (142 Pac.
762), and a judgment for plaintiff was sustained. Mr.
Justice BEAN delivered the opinion of the court and in
the course of the opinion quoted with approval from
*Sheldon* v. *Atlantic Ins. Co.,* 26 N. Y. 460 (84 Am. Dec.
231): .

''A general agent of the insurer may waive a condi-
tion in the policy, that no insurance should be consid-
ered as binding until actual payment of the premium.''

· In this condition of the authorities we feel at liberty
to decide the question, in the way which seems to us
most reasonable and just, and under the circumstances
which surround this case, where the agent in question
was the general agent of the company, created under
the statute of the state as its only authorized general
agent, and being the only representative of the com-
pany within the state, we hold the better rule, and the
one sustained by the weight of authority, to be that
such a corporation cannot, by a general clause like the
one in question, so limit the power of such general
agent, that he cannot waive a provision like this, as to

the mere method or manner of giving notice of the default of the subcontractor, to the defendant company.

We must not be understood as intending to restrict in any way, the power of surety companies to limit, by specific provision, the authority of any particular special agent. Nor are we intending to decide whether, or how far, such companies may limit the power of even a general agent, by just and reasonable provisions directed toward the authority of that particular agent.

What we do hold is, that they may not, by a general provision like this, cut off the power of *all* their agents (and thereby the power of the corporation itself, since it can only act through its agents) to orally or by conduct, modify or waive any provision of its contract, and make such modification or waiver void, in a case where the statutory or common law of the state recognizes such oral modification as entirely good and valid.

We also hold that when the notice of default came into the hands of such a general agent in the way these notices did, it was his duty to transmit them immediately to his principal—and there is a presumption arising that he performed that duty—and that the notices reached the defendant's home office substantially as required by the policy.

This inference is all the stronger on account of the fact that the evidence, as to whether the notices were transmitted, is entirely beyond the reach of the plaintiff and wholly within the power of the defendant and its agent.

Reversed and remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and HARRIS, JJ., concur.