Argued September 12; affirmed October 25, 1932

COMMERCIAL SECURITIES, INC., *v.* HALL ET AL.

(15 P. (2d) 483)

*Frank S. Senn,* of Portland (Goss, Murphy & Skipworth, and Senn & Recken, all of Portland, on the brief), for appellant.

*J. W. McInturff,* of Marshfield (L. A. Liljeqvist, of Marshfield, on the brief), for respondent.

BROWN, J. It is contended by the plaintiff that, on August 14, 1930, Gault, whose interest in the truck had been previously transferred to the plaintiff, secured additional fire insurance in the amount of $2,500 on "his equity" in the truck from the Oregon Automobile Insurance Company and paid the premium thereon, and that, although Gault requested that this insurance be issued to him alone, the policy, as executed, named Glenn Hall as assured, with loss, if any, payable to Gault. Plaintiff asserts that this policy was procured without the knowledge or consent of Hall or of the plaintiff; that neither Hall nor the plaintiff, nor Gault himself, ever saw the policy, but that the local agent who issued the policy placed it in his safe, and that it was never exhibited or delivered to any one before or after the loss, and, finally, that Gault had no knowledge that Hall had been named therein as assured.

The plaintiff further contends that immediately following the destruction of the truck by fire on August 27, 1930, it notified the defendant insurance company, which company sent its adjuster, who took possession of the truck, removed it to a garage, and informed the plaintiff that formal proofs of loss were not necessary. On October 12th, the defendant company took a sworn statement from both Gault and Hall concerning the loss. On September 23d the plaintiff learned of the insurance policy that had been issued at Gault's re-

quest, and immediately advised the defendant company thereof. This defendant then took up the matter with the Oregon Automobile Insurance Company in Portland, and both companies sent representatives to Coos county to see Gault. The representative of the Oregon Automobile Insurance Company reached Gault first, and led him to believe that he had obtained the Oregon policy by fraud, and that the policy was therefore void, and persuaded him to cancel the same and return the twenty-five hundred dollars which the Oregon Automobile Insurance Company had previously paid to him. After his visit with Gault, this representative met the assistant manager and attorney for defendant Union Automobile Insurance Company, informed them of his conference with Gault, and displayed the check that Gault had given him. This was after banking hours on Saturday afternoon. Thereupon, these officials of the defendant company proceeded to Marshfield, contacted the plaintiff company and informed its officials of the conference with the Oregon Automobile Insurance Company in Portland, and likewise informed them of Gault's action in admitting the policy to be void and in paying back the twenty-five hundred dollars. The question of the validity of this policy was discussed, and the defendant company finally concluded that if there was no fraudulent intent upon the part of Gault in securing the Oregon policy in the first instance he probably could have maintained the policy as a valid policy. They further concluded that if the policy taken out by Gault in the Oregon Company was a valid policy, then Hall, who was named as assured therein, would have violated the conditions of section 12 of defendant company's policy relating to other insurance, and would thereby

have voided defendant's policy in so far as any recovery which he might personally make was concerned. But, on the other hand, if the Oregon policy was void, it could in no way affect Hall's interest in defendant's policy. Plaintiff contended that at this and other times the defendant company promised and agreed to pay the amount owing to the plaintiff, and promised and agreed to maintain its policy in full force and effect as far as plaintiff's interests were concerned.

The record discloses that, pursuant to the foregoing discussion, this defendant company, for the sole purpose of voiding Hall's interest in plaintiff's insurance policy and saving to the company the sum of $948.87, the full amount of Hall's interest in the policy, caused Gault to cancel or stop payment on his check to the Oregon Automobile Insurance Company and to maintain, or endeavor to maintain and establish, the Oregon policy as valid and in full force and effect, after Gault himself had admitted it to be void. Later on, the defendant company conceived the idea of voiding its policy as to the plaintiff as well, on the ground of the issuance of a valid policy by the Oregon Automobile Insurance Company covering the same risk.

The insurance policy involved in this case is not a standard fire policy, nor is such form necessary. See Subdivision 3, section 46-122, Oregon Code 1930.

See, also, *Walker v. Fireman's Fund Insurance Co.,* 114 Or. 545 (234 P. 542), and *Williams v. Pacific States Fire Insurance Co.,* 120 Or. 1 (251 P. 258).

The meeting which resulted in the determination to request Gault to stop payment on the twenty-five hundred dollar check he had given to the Oregon Automobile Insurance Company was attended by J. W. McInturff, one of plaintiff's attorneys, Irving C.

Allen, of the defendant company's attorneys, Mr. Howe, defendant's manager, and Claude Giles, counsel for Gault. As to what took place at that meeting, Mr. McInturff testified, in part:

"The four of us then talking intermittently gave Mr. Giles a synopsis of all that had occurred, * * * and explained to Mr. Giles their theory of the proposition, and told Mr. Giles that, regardless of the other insurance, or regardless of what happened, the claim of the Commercial Securities would be fully paid. Mr. Giles specifically asked them about that, and told them that he was the attorney for Mr. Gault, and that Mr. Gault was an endorser on the Hall contract; that he was particularly interested to know whether or not what they wanted him now to do would affect Mr. Gault in any way by not having Commercial Securities' claim paid, and they told him there—* * * to get in touch with Gault * * * and requested him to have Gault cancel or stop payment on the twenty-five hundred dollar check which he had given to the Oregon Insurance Company."

Mr. Allen, attorney for the defendant company, testified that the calling of Mr. Giles into the consultation was for the purpose of requesting him to get Mr. Gault to cancel the check he had given to the Oregon Insurance Company, and that witness had approved such action.

Upon being asked what transpired at the meeting after his arrival, Claude Giles testified:

"When I entered your private office you introduced * * * two men to me. One was the attorney for the defendant in this case, and the other, as I remember, was assistant manager * * *. It was explained to me that a check had been issued by the Oregon Insurance Company to Mr. Gault and a policy had been taken on a certain automobile, and I was assured that, having retained that check, the policy would have been good. Mr. Allen, as I remember, as-

sured me that Mr. Gault still had the check because he had seen it Saturday afternoon sometime, at least it was at the bank and the bank closed Saturday afternoon as I knew, and that this check could be stopped of payment on it, and asked me  *  *  *, it was suggested to me by one of the three men that I call up Mr. Gault and have payment stopped on that check  *  *  *. I was interested in Mr. Gault and I was fearful that I might advise him to take some action to his own detriment in the future, so I did inquire somewhat into just why they were so sure that the policy was good, as they had previously explained to me that he had been persuaded to give his check back to the Oregon Insurance Company for a premium—not a premium, but a disbursement that the Oregon Insurance Company had paid him.  *  *  *  It was explained to me by Mr. Allen that Gault took his insurance in good faith, and that the Oregon Insurance Company was bound because they knew all the details, that they had—that there was a letter written by Mr. Kelly's office telling about this other insurance, and that company issued their policy with full knowledge of all the details, and if Mr. Gault would merely stop payment on the check he could undoubtedly keep that money, that he was entitled to it  *  *  *  Gault was endorser on some paper, that  *  *  *  the Commercial Securities Company held insurance to protect him on the paper, and I wanted to know whether Gault was going to be protected on that paper.  *  *  * One of the men, I will not say which,  *  *  *  they did say the Commercial Securities Company would be protected, and you said there was no danger but what that contract would be paid and that Gault would be released, and I took your word for it.''

A. E. Gault, who it is alleged procured the second policy, testified:

''Q. Now, you said you were taking this insurance with the Oregon Automobile Insurance Company. What interest did you want to insure? A. I wanted to insure the interest that I held there personally.

"Q. Did you want to insure the interest of the Commercial Securities Company? A. No sir, absolutely, it wasn't for that, it was my personal interest.

"Q. Did you want to insure the interest of Glenn Hall? A. Not particularly, no. As far as he was concerned, he was already insured.

"Q. You were only wanting to insure your own equity? A. My own personal interest.

"Q. What you figured you had an equity in the truck? A. Yes.

"Q. Now, where did you figure that you had an equity in the truck? A. The reason I figured I had an equity in this truck was what we term a double contract. These boys were working at my camp at the time and I took a separate contract from them for this truck. * * *

"Q. Did you know at that time whether or not you were entitled to insurance on that equity? A. I did not.

"Q. Was there a question in your mind whether you were or not? A. There was a question in my mind until after I received this back from the company. * * * That is the reason I asked whether I could insure my equity or not.

* * * * *

"Q. You didn't give them any directions to write, to even put Glenn Hall's name in that policy, did you, Mr. Gault? A. Well, I don't think that I did. I was only asking for my personal interest.

"Q. Did you read the policy before the fire? A. I never saw the policy. I haven't seen them yet, I haven't seen them today, I never did see them. The policy when it came back was left in Mr. Kelly's safe. * * *

"Q. The first time you knew Glenn Hall's name was in the policy was when the check came? A. When the check came."

Glenn Hall testified that, until about two days after the fire, he had no knowledge of the placing of the additional insurance upon the truck at the request

of A. E. Gault; that he paid no part of the premium thereon, and received no money from the insurance. He further testified:

"Q. There has been some evidence here that you signed a check. I hand you this check marked Defendant's Exhibit 4. Have you seen that check before? A. Yes, I did.

       *       *       *       *       *

"Q. At whose request did you endorse that check? A. A. E. Gault.

"Q. After the check was endorsed what became of it? A. A. E. Gault received it. That is the last I knew."

The policy was never delivered to Hall, and, according to his testimony, he neither authorized nor ratified the procuring of additional insurance upon the truck by Gault.

As to the effect of the endorsement of the above-mentioned check by Hall, we note the following from *Gould v. Maine Farmers' Mutual Fire Insurance Co.,* 114 Me. 416 (96 Atl. 732, L. R. A. 1917 A, 604):

"The mere endorsement of a check by a mortgagor sent in payment of a claim on a policy taken out by the mortgagee in the name of the mortgagor, and made payable to the mortgagee as his interest may appear, and delivery of the check to the mortgagee, do not make the procuring of the policy the act of the mortgagor so as to defeat liability on a former policy procured by him with a loss payable to mortgagee clause, which provides that it shall become void if additional insurance is procured without assent of the insurer." Syl., Point 1.

The position taken by Hall would seem to strengthen the contention of Gault that he actually believed he had an insurable interest in the truck when the second policy was written. If Gault had such in-

terest, the issuance of the Oregon Automobile Insurance Company's policy to him did not render invalid the policy involved in this action.

In arriving at the meaning of an "Insurable Interest," the following excerpt from 4 Words and Phrases (Third Series), p. 346, will be helpful:

"Any person has an insurable interest in property if he receives a benefit, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of, the property itself."

As to what constitutes an insurable interest generally, we direct attention to the following from Cyclopedia of Automobile Law, Huddy (9th Ed.), 13-14, p. 57:

"Whoever may fairly be said to have a reasonable expectation of deriving a pecuniary advantage from the preservation of the subject-matter of insurance, whether that advantage inures to him personally or as the representative of the rights or interests of another, has an insurable interest."

At page 59 of this valuable work, we read:

"Both a mortgagor and a mortgagee may have insurable interests; insurance by one without the knowledge of the other does not constitute other or additional insurance. The mortgagor and the mortgagee may insure their several interests in separate and distinct policies of insurance, by the same or different insurers, at one or different times."

Still another pertinent observation is found in Richards on the Law of Insurance (4th Ed.), at section 25, where the author says:

"It may be stated generally that any legal or equitable estate, or any right which may be prejudicially affected, or any liability which may be brought

into operation, by a fire, will confer an insurable interest.   *   *   *   A defeasible interest is insurable, as also is a contingent, or inchoate, or partial interest.''

■ It is very clear from the testimony in this case that the defendant company, through its representatives, waived its right to question the validity of the policy issued by it to Glenn Hall for the protection of the plaintiff.

The case of *Farley v. Western Assurance Company*, 62 Or. 41 (124 P. 199), involved the validity of an insurance policy which contained the following provisions:

''No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such conditions and provisions, no officer, agent, or representative shall have power to be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto.''

The policy also provided that, in addition to notice of loss, proof of loss should be made within sixty days, and that the loss should not become payable until sixty days after proof. The assured gave notice, but did not make proof of loss, neither was proof of loss waived by writing upon the policy as required therein. However, the defendant company sent an adjuster, who undertook to agree with the assured that the company would pay a certain sum if the assured would agree to accept it. This agreement was not in writing, and of course was not in any way endorsed upon the policy. The company refused to pay and defended upon the ground that plaintiff did not make the neces-

sary proofs within the time required. Despite the limitations of the policy, it was held by this court that the adjuster had authority to waive the proof of loss. Mr. Justice McBride, in rendering the opinion for the court, said:

"The defense is unconscionable. Defendant sent its agent out to adjust and settle the loss, and he did settle the amount of it, and agreed that his company should pay it. He was not a mere adjustee or investigator. He had authority to settle, as defendant admits. Defendant cannot send out an agent clothed with such authority and trick unsuspecting claimants into a reliance on his representations, and then repudiate them by attempting to hide behind obscure clauses in the policy. There is no question as to the amount of the loss, and no serious question as to the representations made by defendant's agent; and, if defendant had required further formal proof, it should, in common honesty, have notified plaintiffs to furnish them." *Farley v. Western Assurance Co.*, supra.

In *Cranston v. West Coast Life Insurance Company*, 63 Or. 427 (128 P. 427), the defense was that the premium on the policy had not been paid at the home office of the defendant company in the city of San Francisco, or at any office having authority to receive it. The policy provided that—

"All premiums upon this policy are due and payable at the home office of the company in the city of San Francisco, but may be paid to agents of the company producing receipts signed by the president, a vice president, secretary or assistant secretary and countersigned by such agents. * * * Only the president or a vice president, together with the secretary or assistant secretary (and then only in writing signed by them) have power on behalf of the company to * * * make or modify this or any contract, or to extend the time for making any premium payment * * *."

The application also provided that the policy should not take effect until the first premium had been paid and accepted by the company or its authorized agent. The only payment of premium was made by executing and delivering a promissory note to a local agent of the defendant company, who accepted the note in full payment thereof. On the death of assured the company refused payment on the grounds stated above. Plaintiff secured judgment, but the case was reversed by this court largely upon a question of pleading. It again came before the court, and by an opinion reported in 72 Or. 116 (142 P. 762), a judgment for plaintiff was sustained. In the second case Mr. Justice BEAN, delivering the opinion for the court, quoted with approval from *Sheldon v. Atlantic Insurance Company*, 26 N. Y. 460 (84 Am. Dec. 213), as follows:

"A general agent of the insurer may waive a condition in the policy that no insurance should be considered as binding until actual payment of the premium."

In the case of *Sykes v. Sperow*, 91 Or. 568 (179 P. 488), the court, after reviewing, among others, the cases just discussed, stated its views in the following language:

"In this condition of the authorities, we feel at liberty to decide the question in the way which seems to us most reasonable and just, and under the circumstances which surround this case, where the agent in question was the general agent of the company, created under the statute of the state as its only authorized general agent, and being the only representative of the company within the state, we hold the better rule, and the one sustained by the weight of authority, to be that such a corporation cannot, by a general clause like the one in question, so limit the power of such

general agent, that he cannot waive a provision like this, as to the mere method or manner of giving notice of the default of the sub-contractor, to the defendant company."

The plaintiff herein seeks to void the forfeiture upon the ground, in part, that the defendant company, after full knowledge of all the facts upon which it now relies to establish the forfeiture, retained the premium paid.

A like situation was presented in the early case of *Schmurr v. State Insurance Company*, 30 Or. 29 (46 P. 363). In that case the policy of insurance provided that all waivers of its provisions should be in writing. But the court held that, where a company has full knowledge of facts that render void one of its policies, retains the premium, and fails to cancel the policy, it waives the forfeiture, "and this can be done by conduct or by parol, although the policy itself provides that it shall be in writing." Waiver is a voluntary relinquishment of one's known right, and may be by acts of the party or by accepting benefits accruing on account of that waiver.

In the case of *Insurance Company v. Eggleston*, 96 U. S. 572, 577 (24 L. Ed. 841), it was held:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

■■ Another important case where the question of forfeiture is fully and thoroughly covered is *Frasier*

*v. New Zealand Insurance Co.,* 39 Or. 342 (64 P. 814). In that case Mr. Justice MOORE, speaking for the court, said:

"Conditions prescribed by insurance companies for their benefit or protection can, of course, be waived by them at any time; and, since forfeitures are deemed odious, courts are prompt to lay hold of circumstances that indicate an election to waive the conditions imposed: Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234; Insurance Co. v. Eggleston, 96 U. S. 572; Hartford Life Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671. In Weidert v. State Insurance Co., 19 Or. 261, 24 P. 242, 20 Am. St. Rep. 809, it was held that a waiver which would preclude an insurance company from relying upon the terms of its policy to defeat an action for the recovery of a loss sustained by a fire must be in the nature of an estoppel. In Hollis v. Insurance Co., 65 Iowa 454, 21 N. W. 774, a more just rule, in our judgment, is announced by Mr. Justice Reed, who, in speaking of the contention of an insurance company that acts sufficient to constitute a waiver of the conditions of its policy must be in the nature of an equitable estoppel, says:

"'* * * Neither forfeitures nor estoppels are favored by the law, and it follows necessarily from this consideration that the waiver of a forfeiture may be sustained by circumstances which do not present the strong equities which would be required to create an estoppel. When plaintiff asserted a claim under the policy for the loss, and defendant was informed of the facts out of which the forfeiture grew, it had the right at once to treat the contract as at an end. If it had elected simply to remain silent, perhaps a waiver could not have been inferred from its silence; but if, with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plaintiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one.'"

We subscribe to this doctrine.

The able representatives of the defendant insurance company in this case have combed the record in search of some substantial error that would justify a reversal of the judgment appealed from. They assert, in effect, that danger lies in over-insurance. We are fully aware of the evils that too often arise out of over-insurance. However, we have read the record with care, and find no evidence that points towards a guilty act upon the part of the assured. The record establishes beyond controversy that the assured has sustained an honest loss by fire. In the light of this fact, this court has not the right to defeat a recovery under the policy by declaring a forfeiture. The truck involved was burned more than a year ago; and it seems to the writer that the litigation resulting therefrom should be terminated.

After careful consideration of all the allegations of error, we conclude that the judgment entered in the court below should be affirmed. It is so ordered.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.